**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| **RENEE WATSON,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-13-2071 |
| **HSU DEVELOPMENT, INC.,** | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This is a sex discrimination case brought by Plaintiff Renee Watson ("Watson") against her former employer, HSU Development, Inc. ("HSU"), for purported violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq*.[1] This Memorandum Opinion and accompanying Order address HSU's motion for summary judgment, ECF No. 41. A hearing is not necessary. *See* Loc. R. 105.6 (Md.). For the reasons stated below, HSU's motion for summary judgment is GRANTED. Watson's complaint is therefore dismissed with prejudice.

**I.   BACKGROUND**

HSU is a full service construction company engaged in government and private contracting since 1994. *See* ECF No. 39 at ¶ 5. Watson was hired by HSU on July 18, 2008 as an unskilled laborer, notwithstanding her qualifications as a carpenter. *See* ECF No. 41-7 at 4[2]; *see*

---

[1] At various times throughout this litigation, Watson has raised arguments concerning alleged race-based discrimination and retaliation in violation of Title VII. Watson's opposition to HSU's motion for summary judgment, however, explicitly states that she has abandoned these claims. *See* ECF No. 48 at 12 at n.3. As such, this Memorandum Opinion only addresses Watson's sex-based discrimination claims.

[2] For the citations in this Memorandum Opinion, the Court uses the page numbers assigned to the document from CM/ECF or PACER.

1

*also* ECF Nos. 48-1 at ¶¶ 4, 10 & 48-5. Watson was never told that she was interviewing for a carpenter position. *See* ECF No. 48-1 at ¶¶ 10-12. In fact, neither Watson nor HSU ever discussed a carpenter position during the interview; however, Watson "assumed that the position for which [she] was hired was a carpenter's position." *Id.* at ¶ 12.

When Watson was hired as a laborer, she was paid an hourly wage of $14.06. *See* ECF Nos. 41-10 at 2 & 41-7 at 6. Around the same time Watson was hired, HSU also hired three male laborers at the same hourly rate of $14.06. *See* ECF No. 41-10. For a period of time, Watson and these three men worked together at one of HSU's projects at the Department of Veterans Affairs Hospital. *See* ECF No. 41-4 at ¶ 7.

After three months on the job, Watson had her first performance review during which she was given high marks. As a result, Watson received a wage increase to $19 per hour (*see* ECF No. 41-15 at 2), which gave her a higher hourly wage than seven other male employees within her classification as a laborer. *See* ECF No. 41-4 at ¶ 14.[3] Watson later learned, however, that two male HSU employees, James Carr ("Carr") and Robert Jones ("Jones"), earned $22.50 per hour, despite the fact that, at times, they performed the same or similar work as her. *See* ECF No. 48-2 at ¶¶ 6, 8; *see also* ECF Nos. 48-1 at ¶¶ 18, 20-25, 40; 48-2 at ¶¶ 9-10. Watson therefore filed this lawsuit against HSU claiming violations of Title VII. Specifically, Watson contends that HSU violated Title VII by paying her lower wages than Carr and Jones and also by not hiring her as a carpenter when she was qualified to work as one. HSU has filed a motion for

---

[3] Watson's complaint alleges that she received her wage increase *after* she complained about discrimination and that the increase was not related to her performance. *See* ECF No. 39 at ¶¶ 18-20. The Court notes, however, that this allegation is inconsistent with the factual statement in her EEOC Charge of Discrimination which states that Watson complained of discrimination after her wage had already been increased to $19 per hour.

summary judgment. *See* ECF No. 41. For the reasons discussed more fully below, the Court will grant HSU's motion.

## II. STANDARD OF REVIEW

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.,* 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248-49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Grave-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## III. DISCUSSION

### A. Motion to Strike

Prior to addressing the merits of HSU's motion for summary judgment, the Court must first address HSU's request that the Court disregard various allegations contained in Watson's

amended complaint. *See* ECF No. 41-1 at 1-2. Although HSU's request is not formally stylized as a motion to strike, the Court will nevertheless treat it as one.

Watson originally filed her complaint on July 17, 2013. *See* ECF No. 1. After discovery was complete, HSU filed a motion for summary judgment on July 9, 2014. *See* ECF No. 22. Although HSU did not argue in its motion that the Court lacked subject-matter jurisdiction, the Court had concerns that it did not have such jurisdiction over this action because Watson failed to allege that she filed her complaint within ninety (90) days of receipt of the EEOC's right to sue letter – a perquisite for bringing a Title VII claim. *See* ECF No. 39 at ¶ 22. As such, the Court ordered Watson "to amend her complaint to include the date she received the right to sue letter." ECF No. 36. On December 1, 2014, Watson filed an amended complaint indicating that she had, in fact, filed this action within ninety (90) days of receipt of the EEOC letter. In addition to amending her complaint to include the date of receipt of the letter, however, Watson also made substantive changes. Specifically, Watson added a claim that HSU discriminated against her by failing to recall her following her layoff when, instead, it recalled male employees who had also been laid off. *See* ECF No. 39 at 5. Watson did not seek, nor did the Court provide, leave to amend her complaint in this fashion as is required by Fed.R.Civ.P. 15(a)(2). HSU asks that the Court to disregard this (and other) allegations. The Court will grant HSU's request.

When the Court ordered Watson to amend her complaint in November 2014, it did so for the limited purpose of establishing the date on which she received the EEOC's right to sue letter. *See* ECF No. 36. It did not permit Watson to amend or reframe her complaint in light of the arguments HSU previously made in its earlier motion for summary judgment. Nor did it permit Watson to add substantive claims to her complaint, which would, with discovery having already been completed, severely prejudice HSU. Thus, pursuant to Fed.R.Civ.P. 12(f), the Court will

strike all of the changes made in Watson's amended complaint beyond the added allegation concerning the date upon which she received the EEOC's right to sue letter. *See In re Keithley Instruments, Inc., Derivative Litig.*, 599 F. Supp. 2d 908, 913 (N.D. Ohio 2009) (striking allegations in amended complaint that "exceeded the scope of leave granted by the Court" because "allowing them to stand would severely prejudice Defendants"). Watson is therefore limited to the allegations contained in her original complaint which challenge HSU's decision to pay her less than Carr and Jones, as well as HSU's failure to hire Watson as a carpenter.

B.      **Title VII – Disparate Treatment in Compensation**

Title VII makes it illegal for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). Actionable sex-based disparate treatment can include "claims based on unequal pay for equal work . . . ." *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th Cir. 1994). To make out a *prima facie* case of disparate treatment in compensation, Watson must establish that she "(1) is [a] member of a protected class; (2) held a job similar to jobs held by those outside the protected class; and (3) [s]he was paid less than these similarly situated employees who were outside the protected class." *Darden v. Hous. Auth. of Baltimore*, No. 06-216, 2006 WL 3231964, at *6 (D. Md. Nov. 7, 2006); *see also Chika v. Planning Res. Corp.*, 179 F.Supp.2d 575, 585 (D. Md. 2002). Importantly, "the jobs which a plaintiff attempts to compare must be similar enough to raise an inference of intentional discrimination." *Galarraga v. Marriott Employees Fed. Credit Union*, No. 94-1986, 1996 WL 376408, at *6 (D. Md. Apr. 24, 1996). Here, based on the totality of the evidence, Watson has failed to demonstrate that she was treated less favorably than similarly situated male employees.

Watson bases her prima facie case on two male comparators who were given starting hourly wages of $22.50 per hour. When a plaintiff bases the discrimination entirely upon a comparison to employees from outside her protected class, like Watson does, she "must demonstrate that the comparator was 'similarly situated' in all relevant respects." *Sawyers v. United Parcel Serv.*, 946 F.Supp.2d 432, 442 (D. Md. 2013) *aff'd*, No. 13-1777, 2014 WL 2809027 (4th Cir. June 23, 2014) (citations and internal quotation marks omitted). "The similarity between comparators . . . must be clearly established in order to be meaningful." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008). "The appropriate factors to consider in a discriminatory compensation claim include whether the Plaintiff and those who she claims are similarly situated had the same or substantially similar experience, education, duties, and qualifications." *Romeo v. APS Healthcare Bethesda, Inc.*, 876 F. Supp. 2d 577, 592 (D. Md. 2012). Here, one of the comparators, Jones, is not similarly situated to Watson. Specifically, it is undisputed that Jones was hired as one of HSU's "lead carpenters," whereas Watson was hired as a laborer. *See* ECF No. 46-1 at ¶ 19; *see also* ECF No. 48-2 at ¶ 3. Additionally, it is undisputed that Jones was specifically hired as a lead carpenter due to his skill set, which included experience with drywall finishing, VCT flooring, and door hardware installation. *See* ECF No. 41-4 at ¶ 15.  There is no evidence in the record that Watson was hired because she possessed these specific skills. As such, Jones is not an appropriate comparator and cannot be used to satisfy the *prima facie* case.

Watson also relies on Carr for comparator evidence. Like Watson, Carr was hired as an unskilled laborer and appears, in all material respects, to possess the same qualifications and experience as Watson. Despite these similarities, Carr was given a starting hourly wage of $22.50 as compared to Watson's $14.06. If this were the only evidence in the record, the Court

would likely conclude that such a disparity satisfies the *prima facie* case. But unfortunately for Watson, there is additional evidence that substantially, if not entirely, negates the impact of this wage disparity.

First, it is undisputed that at or around the time Watson was hired at her original hourly wage of $14.06, three other male laborers were hired at that exact same wage. Specifically, Walter Lawrence was hired on the same date as Watson and was paid $14.06 per hour. *See* ECF No. 41-10 at 2. Four days later, another male laborer, Steven George, was hired at the exact same wage. *See id.* And then on August 12, 2008, Keith Hill was hired as a laborer with an hourly wage of $14.06. *See id.* Watson has not adduced any evidence to suggest that the work performed by these individuals differed in any material respects from the work she performed. To the contrary, it appears that Watson and these men worked together performing similar work on at least one of HSU's projects at the Department of Veterans Affairs Hospital. *See* ECF No. 41-4 at ¶ 7.

Additionally, in October 2008, Watson received a wage increase to $19 per hour. *See* ECF No. 41-4 at ¶ 15. At that time, Watson had a higher hourly wage than seven other male employees within her classification as a laborer. *See* ECF No. 41-4 at ¶ 14. Thus, while it is true that Watson has identified a single similarly situated male employee who earned a higher wage than her, when the Court looks at the totality of the evidence, including the fact that three other similarly-situated male employees earned less than her, it cannot conclude that, on the whole, Watson was treated less favorably than similarly situated male laborers. *See White v. BFI Waste Servs., LLC*, 375 F.3d 288, 296, n.3 (4th Cir. 2004) (affirming district court's grant of summary judgment in case involving claims of racial discrimination in compensation where "the evidence [], in the aggregate, [demonstrates that] black drivers . . . were among the highest paid drivers").

This is particularly true where, as here, there is evidence in the record to suggest a gender-natural reason for the pay disparity between Carr and Watson. Specifically, the evidence indicates that Carr was paid a higher wage due to his close personal relationship with one of HSU's supervisors with whom he attended church. *See* ECF No. 48-2 at ¶ 20. While this may not be an appropriate reason for a pay disparity, it does not suggest discriminatory intent, particularly given evidence of other male unskilled laborers making less than Watson. *See Hassman v. Valley Motors, Inc.*, 790 F. Supp. 564, 569 (D. Md. 1992) ("Whereas the [Equal Pay Act] creates a sort of 'strict liability' for discrimination on the basis of sex, Title VII requires a showing of some sort of 'discriminatory intent.'").[4] Watson has therefore failed to satisfy her *prima facie* case and the Court must dismiss her disparate treatment in compensation claim.

In reaching this conclusion, the Court must emphasize that the record in this case is entirely devoid of any evidence of intentional sex-based discrimination. Instead, Watson relies on the fact that she was "the only female construction worker" employed by HSU to support her claim. ECF No. 48 at 16. According to Watson, this "creates a very strong inference that [the job] selections were not randomly made." *Id.* The Court disagrees. The parties do not seriously dispute the fact that the construction industry is heavily dominated by male workers. In fact, according to a recent report issued by the Nation Women's Law Center, women comprised only 2.6% of the construction industry's workforce in 2013. *See* ECF No. 41-6 at 5 (full report available at www.nwlc.org/sites/default/files/pdfs/final_nwlc_womeninconstruction_report.pdf). Given the homogenous nature of the construction industry then, the fact that this particular

---

[4] HSU puts forth an alternative reason for the pay disparity. According to HSU, Carr, who had seven months more tenure than Watson, was paid more due to his seniority. *See* ECF No. 41-1 at 10. It appears, however, that Carr was paid more than Watson from the time he was hired in 2007. *See* ECF No. 41-10. HSU's seniority argument is therefore meritless. Nevertheless, in Mr. Robert's affidavit attached to Watson's opposition, he indicates that Carr's pay differential was due to his personal relationship with an HSU supervisor. *See* ECF No. 48-2 at ¶ 20.

company only has one female construction worker is not surprising or, by itself, indicative of discrimination. Thus, without more, the simple fact that Watson was the only female construction worker employed by HSU, cannot raise an inference of intentional sex-based discrimination.[5]

Nor can Watson rely on an inappropriate remark allegedly made by one of HSU's managers named "Mr. Stanley." According to Watson, Mr. Stanley told Jones that he did not know why HSU would hire a "lady carpenter." ECF No. 48 at 17. Watson argues that Mr. Stanley's views of women in the construction industry must be "reflective of [the views of] other managers at HSU and as contributing to the adverse monetary decisions directly impacting" her. *Id.* at 18. Again, the Court disagrees. As Watson readily admits, there is "no evidence that Mr. Stanley had direct input into the salary to be given to Ms. Watson." *Id.* Nor is there any evidence to suggest that Mr. Stanley had any indirect input into these decisions. Accordingly, there is no causal connection between HSU's decisions regarding Watson's wages and Mr. Stanley's remark. Thus, in the absence of any evidence to suggest that Mr. Stanley's views of women in the construction industry were somehow shared by those HSU employees who were involved in decisions concerning Watson's wages, the Court will not impute Mr. Stanley's alleged discriminatory animus to HSU. *See, e.g., Laxton v. Gap Inc.*, 333 F.3d 572, 584 (5th Cir. 2003) (holding that "the discriminatory animus of a manager can be imputed to the ultimate decisionmaker if the [manager] . . . 'had influence or leverage over'" the ultimate decisionmaker); *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 286 (3d Cir. 2001) (holding that an employer is liable for the discriminatory actions of employees exhibiting discriminatory animus if they "influenced or participated in the [adverse employment]

---

[5] The Court notes that is undisputed that HSU did, in fact, other employ female workers, albeit in non-construction jobs. *See* ECF No. 48-6 at ¶ 25.

decision"); *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 55 (1st Cir. 2000) ("One method [of proving pretext] is to show that discriminatory comments were made by . . . those in a position to influence the decisionmaker.").

In short, without any evidence to support an inference of discrimination, the mere fact that a female employee was paid less than a single similarly situated male employee does not meet the *prima facie* case where, as here, there were multiple other similarly situated male employees who were paid the same as or less than the female employee. *See White*, 375 F.3d 288; *see also Galarraga*, No. 94-1986, 1996 WL 376408, at *6 ("[T]he jobs which a plaintiff attempts to compare must be similar enough to raise an inference of *intentional* discrimination.") (emphasis added). As such, the Court must dismiss Watson's disparate treatment in compensation claim.

## C. Title VII – Failure to Hire

Watson also claims that HSU's failure to hire her as a carpenter when she was otherwise qualified to be a carpenter shows that HSU discriminated against her on the basis of her sex in violation of Title VII. To set forth a *prima facie* case of discrimination for failure to hire, a plaintiff must show four elements: "(1) she is a member of a protected class; (2) her employer had an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Evans v. Technologies Applications & Service Co.,* 80 F.3d 954, 959–60 (4th Cir.1996) (citations omitted). Watson has not met this burden.

First, Watson's failure to hire claim fails because she has not demonstrated that HSU was hiring for an open carpenter position at the time she applied. To be sure, Watson concedes in her declaration that she was never told that she was interviewing for a carpenter position. *See* ECF

No. 48-1 at ¶¶ 10-12. She also concedes that neither Watson nor HSU ever discussed a carpenter position during the interview; rather, she just "assumed that the position for which [she] was hired was a carpenter's position." *Id.* at ¶ 12. Watson has therefore failed to adduce any evidence that HSU was hiring a carpenter at the time she applied. To the contrary, the evidence suggests that HSU was actively hiring unskilled laborers, as demonstrated by HSU's actual hiring of three other unskilled laborers around the same time it hired Watson. *See* ECF No. 41-4 at ¶ 7; *see also* ECF No. 41-10. Additionally, even if Watson had sought an open carpenter position, her claim would still fail based on the lack of evidence giving rise to an inference of unlawful sex-based discrimination. *See supra* Section III.B.

## IV.    CONCLUSION

For the reasons discussed above, the Court grants HSU's motion for summary judgment. Watson's complaint is therefore dismissed with prejudice.

Dated: June 5, 2015                                                         /S/
                                                                    George Jarrod Hazel
                                                                    United States District Judge